# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| CARROLS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case No. |
| | ) |
| CITY OF NORTH CANTON, OHIO, | ) JURY TRIAL DEMANDED |
| | ) |
| Defendant. | ) |

## VERIFIED COMPLAINT

### PRELIMINARY STATEMENT

1. Carrols LLC ("Carrols") seeks temporary, preliminary and permanent injunctive relief protecting Carrols from Defendant's, City of North Canton, Ohio's ("North Canton"), bad faith breaches of Carrols' lease as well as such additional relief as may be proven. North Canton is wrongfully seeking to terminate a long-standing lease agreement and evict Carrols, even though Carrols has fully paid its rent and North Canton has never sent a proper default, termination or eviction notice.  Absent immediate injunctive relief, therefore, Carrols will suffer irreparable injury that cannot be adequately remedied through an award of money damages.

### THE PARTIES, THE PROPERTY AND THE LEASE

2. Carrols Corporation is a Delaware corporation with its principal place of business in Syracuse, New York. Carrols Restaurant Group, Inc., which owns 100% of the stock of Carrols Corporation, is a public company trading under the symbol TAST. Carrols Restaurant Group, Inc. has annual revenues in excess of one billion dollars. Carrols Corporation is the sole member of Plaintiff, Carrols LLC.

3. Carrols operates in excess of 1,000 Burger King restaurants, including over 60 restaurants in Ohio. Carrols is a long-time Ohio employer and at any one time employs in excess of 1000 Ohio residents.

4. Since 1998, Carrols Corporation or Carrols LLC has operated a Burger King restaurant at 1475 North Main Street, North Canton, Ohio (the "Property").

5. Carrols' North Canton Burger King generates yearly in excess of one million dollars revenue and employees in excess of 20 area residents.

6. In 1998, Carrols Corporation signed a lease ("Lease") to operate a Burger King at the Property. (Exhibit A). In 2008, Carrols Corporation assigned its rights as tenant and operator to Plaintiff Carrols.  (Exhibit A). The Lease provided for an initial 20-year term with four five-year renewal terms.  In 2018, Carrols exercised the first of the four renewal terms and therefore has 18 additional years to control the Property as a tenant. (Exhibit B). Over the years, the Lease was assigned several times. As of May 2020 Carrols' landlord was non-party Seritage KMT Finance LLC.

7. In August 2019, in reliance upon the lease rights extending until 2038, Carrols invested in excess of $700,000.00 to remodel the North Canton Burger King.

8. The City of North Canton, Ohio is a municipality. North Canton purchased the Property from Seritage KMT Finance in late May 2020, although Carrols is without knowledge of the exact date of purchase.

9. On or around May 26, 2020, Seritage KMT Finance created and, on information and belief, mailed, a document informing Carrols that the Lease had been assigned to North Canton as the new owner of the Property. (Exhibit C). According to published reports, North Canton

53729382;4

purchased the Shopping Plaza to create a corporate campus or headquarters and is not interested in "retail" establishments such as the Carrols' Burger King. (Exhibits F, G and J).

10. Carrols did not receive actual notice of the assignment of the Lease before it processed Seritage KMT's LLC's June rent, and Carrols paid its June rent in the amount of $2,532.33 to Seritage KMT LLC in the ordinary course. Carrols thereafter attempted to cause Seritage KMT LLC to credit North Canton with the June rent payment. Carrols was never informed of the contractual arrangement between North Canton and Seritage for post-closing reconciliation of such payments.

11. On June 26, 2020, North Canton served a default notice regarding alleged unpaid June rent. (Exhibit D). North Canton did not serve the default notice as required by the Lease. As a result, Carrols did not receive actual notice of the notice of default until July 8, 2020.

12. On July 9, 2020, Carrols paid June rent again, this time directly to North Canton.

13. On July 9, 2020, North Canton served a notice terminating the Lease after 22 years based upon Carrols' alleged failure to pay $2,532.33, despite never properly serving a default notice and despite a full cure of the alleged shortfall. (Exhibit E).

14. North Canton also failed to serve the termination notice as required under the Lease.

15. North Canton refused to accept the rent monies tendered to it on July 9, 2020 and is seeking to evict Carrols as of July 21, 2020, even though it has no judicial sanction for such actions.

16. Carrols reasonably fears that North Canton will unlawfully seek to disrupt Carrols operations on Monday July 21, 2020.

## JURISDICTION AND VENUE

17. This Court has personal jurisdiction over the parties.

18. This Court possesses subject matter jurisdiction over all claims in this action pursuant to 28 USC §1332. Plaintiff Carrols LLC has only one member--Carrols Corporation. Carrols Corporation is a citizen of Delaware and Carrols' principal place of business is Syracuse, New York. Defendant North Canton is a citizen of Ohio.

19. Further, he amount at issue is in excess of $75,000 as the eviction, if carried out, would result in substantial economic damage to Carrols, well in excess of $75,000, in addition to various forms of irreparable harm. Carrols' annual revenue at its North Canton location is in excess of one million dollars per year. Absent relief from this Court from North Canton's unlawful actions, Carrols will suffer millions of dollars in losses, even though some of the losses may be beyond precise calculation. Additionally, in reliance upon the Lease, Carrols has regularly invested substantial sums in the Property, including an August 2019 recent re-model that cost in excess of $700,000. Those investments will be lost if North Canton is permitted to terminate the Lease through its unlawful actions. When litigation does not seek monetary damages, but declaratory or injunctive relief, Courts measure the amount in controversy by "the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *see, also, Cincinnati Ins. Co. v. Zen Design Group, Ltd.,* 329 F.3d 546, 549 (6th Cir. 2003). Thus, the matters at issue here vastly exceed $75,000 whether measured by the lost future revenue, the value of Carrols' investment in the property, or the severe and lasting harm to existing relationships and goodwill.

20. Venue in this action properly lies in the Northern District of Ohio, Eastern Division as the events at issue occurred in Stark County, Ohio.

## STATEMENT OF FACTS

21. From 1998 until the present date, Carrols has paid full monthly rent to a series of landlords who have owned the Property. Carrols has also fulfilled all other responsibilities as a tenant, and no prior landlord has expressed dissatisfaction with Carrols as a tenant.

22. As the nation's largest Burger King franchisee, an indirect subsidiary of a billion dollar public company, and an experienced operator, Carrols is an exceptional and desired tenant.

23. Carrols has employed tens of thousands of Ohio residents over the many years it has operated in Ohio. Carrols owns locations throughout Ohio, including North Canton, Akron, and Kent.

24. Carrols has hundreds of landlords in multiple states. From its headquarters in Syracuse, New York, it coordinates payments to those landlords, through a largely automated process. Each month, in order to ensure timely payment, Carrols commences the process of paying the rent several days in advance of the due date. In order to expedite the process, Carrols requests information, such as direct deposit information, from its various landlords.

25. During the life of the Lease, Carrols has regularly invested in the Burger King restaurant on the Property, at a cost in excess of $700,000.00.

26. The 1998 Lease contains several provisions relevant to the dispute before the Court.

    a. The Lease provides for a 40-year term, with four five-year renewal terms, at Carrols' option in addition to the original 20 year term.

    b. The Lease requires that any default be preceded by a ten-day notice to cure, with any such notice sent by certified or registered mail to ensure proper notice.

    c. Carrols has a right of quiet enjoyment to the Property.

27. In March 2020, the COVID-19 Pandemic escalated throughout the United States, ushering in an unprecedented and unforeseeable time of uncertainty and change.

28. On March 22, 2020, the Ohio Director of Health issued a Director's Order closing all non-essential businesses in Ohio.

29. The Pandemic, related government orders, restrictions, safety concerns, and public fear have been crippling to restaurants in Ohio and elsewhere.

30. Even at the height of Pandemic, with sales dramatically lower, Carrols still paid both April and May rent for the Property.

31. New York imposed similar restrictions to Ohio during this time period. Carrols' Syracuse home office operated remotely beginning in March 2020, with a skeleton crew on site. Even as restrictions in New York were eventually relaxed, Carrols' home office still operated with reduced staff and reduced services, with many employees continuing to work remotely today.

32. In late May 2020, to Carrols' understanding, North Canton purchased the Property. While Carrols received notice of the change in ownership, it did not receive actual knowledge of the transfer until it had already paid June rent to the prior landlord, Seritage KMT LLC.

33. Subsequent to learning that North Canton now owned the Property, Carrols' remotely operating personnel worked diligently to cause the prior landlord to credit the rent to North Canton. That still has not happened.

34. Thereafter, in June, Carrols cooperated with North Canton to ensure that North Canton received credit for the June rent. On June 26, 2020, though, North Canton's outside counsel sent a default notice by overnight mail, rather than through certified or registered mail as required by the Lease. Given Carrols' limited physical presence at its corporate office, Carrols did not actually receive this notice until July 8, 2020. (*See* Exhibit D).

53729382;4

35. After Carrols learned of the transfer, Carrols requested that North Canton provide customary information in order to allow North Canton to automatically receive its rent payments as required by the Lease, as Carrols does for the vast majority of its leased locations. However, Carrols' personnel responsible for implementing the system did not receive the requested information from North Canton until July 2, 2020, at which time they processed the July rent payment in the ordinary course.

36. On July 9, one day after receiving actual notice of the alleged default, Carrols overnighted a check in the amount of $5,164.66 to North Canton, curing the purported default of failure to pay June rent, and also paying July rent. (Exhibit H).

37. Despite receiving the monies, North Canton refused to rescind the unlawful notice of termination and threatened eviction.

38. North Canton's claim that the Lease is terminated is a breach of the Lease: (1) North Canton's notice of default and notice of eviction were ineffective because not served in accordance with the Lease's requirements; (2) the purported default was cured; (3) the amount at issue was extremely small as compared to the length of the Lease; and (4) eviction based on a brief delay in the delivery of $2,532.33 did not harm North Canton in any way.

39. North Canton breached the covenant of quiet enjoyment when it tendered defective and baseless default and termination notices.

40. North Canton's termination and attempted eviction will severely impact Carrols' business reputation and goodwill in Ohio. With business and the economy again beginning to open up, many consumers are ready to dine out again, or have relied upon Carrols' restaurant being there to serve them during the Pandemic. These consumers will come to the Property, only to find

it closed for business. Those customers may fear the reasons why Carrols' restaurant is closed and may decide never to dine at any local Carrols' Burger King restaurant again.

41. In addition to the lost profits, North Canton's actions will cause Carrols to miss scheduled deliveries and suffer disruptions of its supply chain and relationships with vendors.

42. North Canton is unlawfully attempting to advance its own economic interest in redeveloping the Property and take advantage of the Pandemic to evict Carrols from the Property, unlawfully terminating a Lease that Carrols has operated under for 22 years. North Canton's actions not only violate the Lease, but also harm and continue to harm Carrols' reputation, goodwill, business and employees.

43. North Canton officials have publicly stated that they acquired the Property for "tax revenue" and are not interested in having a "retail presence." (*See* Exhibit G and J). The claim of default is purely pretextual, to remove a retail establishment, Carrols Burger King restaurant. Given the remaining lease term of 18 years, Carrols' long history as a local and statewide employer, its history of payment and compliance with the Lease, escalating a dispute over $2,532.33, since paid, into actual termination and eviction is inconsistent with the Ohio duty of good faith inherent in every Ohio contract.

44. The unlawful actions of North Canton also run counter to Ohio public guidance. On April 1, 2020, Ohio Governor Mike DeWine issued Executive Order 2020-08D that recognized that "the economic impacts of COVID-19 on Ohio businesses have been significant" and that "during this public health emergency, commercial evictions and foreclosures destabilize local economies and threaten designated essential businesses and operations." The Governor's order requested that landlords suspend certain rent payments for 90 days and that lenders provide commercial real estate borrowers with a forbearance on mortgages as well. While Carrols does not

need a rent abatement, evicting Carrols for an alleged temporary $2,532.33 shortfall in rent is against Ohio public policy.

45. State courts in Ohio have implemented such policy in the face of predatory landlord conduct and stayed evictions. (*See, e.g.*, Exhibit I).

46. North Canton's actions are in direct violation of Carrols' rights under the Lease and Ohio law.

47. Carrols faces irreparable harm if the Lease is terminated or it is evicted.

   a. Under Ohio law, injury to a real property interest is presumptively irreparable.

   b. If Carrols is evicted, it will be unable to precisely calculate its lost profits, stretching out over the next 18 years, losses that will be measured in millions of dollars, even though the full amount will be difficult or impossible to calculate. .

   c. Carrols' others business relationships will be injured.

   d. The alleged termination, and the threat of eviction, harm the public. Carrols' restaurants employ local residents and have done so throughout the Pandemic. Ohio residents regularly patronize Carrols' North Canton Burger King restaurant. Given the current economic situation, closing down a functioning business is directly against public policy.

48. Court intervention is necessary to prevent North Canton from inflicting further substantial harm on Carrols and the public.

9

## COUNT ONE– BREACH OF CONTRACT
### (Improper Default and Demand for Rent)

49. Carrols repeats the allegations set forth in the foregoing paragraphs as if fully restated herein.

50. The Lease is a binding, enforceable contract.

51. Carrols performed all of its obligations under the Lease except those that were waived, excused or rendered impossible and/or impracticable.

52. Further, the Lease, like all other contracts, contains an implied duty to act in good faith and deal fairly with each other.

53. The implied duty of good faith requires that the parties to a contract not only act in good faith and deal fairly with each other, but also requires honesty and reasonableness in the enforcement of a contract, and it prohibits a party from taking opportunistic advantage of the other party in a way not contemplated by the contract.

54. The Lease contains an express covenant of quiet enjoyment.

55. The covenant of quiet enjoyment protects a tenant's right to a peaceful and undisturbed enjoyment of its leasehold and prevents landlords from obstructing, interfering with, or taking away from a tenant the beneficial use of the leasehold.

56. North Canton breached the covenant of quiet enjoyment through its fabricated default and threat of eviction, carried out for a bad faith improper purpose.

57. North Canton's breach of the implied duty of good faith independently constitutes a breach of the Lease and is ongoing.

58. North Canton breached the contract through, without limitation, the following acts:

    a. Purporting to terminate the Lease absent a valid default;

    b. Refusing to follow the notice and cure provisions of the Lease;

    c.    Refusing to cooperate in good faith with Carrols for an improper purpose, namely to advance a separate business agenda of North Canton;

    d.    Violating the covenant of quiet enjoyment; and

    e.    Taking such other actions as are inconsistent with Carrols' rights, including threatening to unlawfully take possession of the property without following judicial process.

59. North Canton breached the implied duty of good faith in multiple ways, including, but not limited to: (1) delivering a pretextual and defective default notice; (2) alternatively refusing to accept a cure, (3) alternatively unreasonably refusing to permit a small delay in payment during an unprecedented global Pandemic not foreseen by the parties that, because the default notice was physically sent to the home office in a manner not permitted by the Lease, resulted in Carrols not receiving actual notice for nearly two weeks; and (3) threatening eviction and dispossession, knowing that such actions would result in irreparable harm for improper advantage.

60. Carrols is entitled to a judgment against North Canton restraining and preventing its wrongful act and, alternatively and in addition, damages in an amount in excess of $75,000 to be proven at trial as well as such other and further relief that the Court deems appropriate.

## COUNT TWO – DECLARATORY RELIEF

61. Carrols repeats the allegations set forth in the foregoing paragraphs as if fully restated herein.

62. Carrols is not in default or, in the alternative, cured the default, or, further pleading in the alternative, to the extent that Carrols failed to timely pay $2,532.33 in rent during a Pandemic, Ohio law would prevent the landlord from evicting Carrols now that the allege default has been cured.

53729382;4

63. An actual controversy exists between Carrols and North Canton concerning their respective rights under the Lease, and Carrols has no adequate remedy at law. Specifically, the parties dispute:

   a. whether Carrols defaulted under the Lease;

   b. whether North Canton's default and termination notices were ineffective because the notices were not sent pursuant to the terms of the Lease;

   c. whether North Canton actually and lawfully terminated the lease;

   d. whether North Canton has the right to interfere with Carrols operations prior to the year 2038;

   e. alternatively, whether Carrols cured any default; and

   f. alternatively, whether equity and the duty of good faith under Ohio law preclude eviction based on a technical and cured default in these circumstances.

64. Therefore, Carrols seeks a judgment declaring the following:

   a. that the Lease is valid and in effect and that any notices of default, termination or eviction are ineffective;

   b. that Carrols is current on rent under the Lease;

   c. alternatively, that Carrols cured any default through tender of funds; and

   d. awarding Carrols attorneys' fees, punitive damages if proven, as well as pre-judgment and post-judgment interest.

### COUNT THREE– BREACH OF CONTRACT (TEMPORARY, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)

65. Carrols repeats the allegations set forth in the foregoing paragraphs as if fully restated herein.

66. Carrols faces irreparable harm if it is evicted from the Property. Carrols further faces irreparable harm through a declaration of default or a pending notice of eviction, as such assertions violate its obligations under its franchise agreement.

67. The Lease does not expressly permit North Canton to utilize self-help to re-enter the Property, nor does it expressly waive judicial process to re-enter the Property.  North Canton has not sought judicial assistance and has no legal right to enter the Property.

68. North Canton breached the Lease when it fabricated a default, refused to allow a cure, and sought a forfeiture by refusing to accept any monies as a cure.

69. North Canton's ongoing breaches of the Lease will result in irreparable harm to Carrols and Carrols' employees.

70. Carrols is entitled to a temporary restraining order enjoining North Canton from enforcing, or attempting to enforce, its unlawful termination, eviction and dispossession of Carrols from the Property or from taking other action, or attempting to take other action, that interferes with Carrols' operations at the Property because Carrols, and its employees, will suffer imminent and irreparable harm if the unlawful dispossession remains in effect or if North Canton takes any other unlawful actions. This temporary restraining order will allow Carrols to maintain possession of the Property.

71. Carrols is entitled to a preliminary injunction enjoining North Canton from enforcing, or attempting to enforce, its unlawful dispossession of Carrols from the Property, terminating or purporting to terminate the Lease,  or from taking other action, or attempting to take other action, that interferes with Carrols' operations at the Property because Carrols, and its employees, will suffer irreparable harm if the unlawful dispossession remains in effect or if North Canton takes any other unlawful actions.

72. Carrols is entitled to a permanent injunction enjoining North Canton from enforcing, or attempting to enforce, its termination or threatened eviction of Carrols or from taking other action, or attempting to take other action, that interferes with Carrols' operations at the Property because Carrols, and its employees, will suffer irreparable harm and unjustified harm.

WHEREFORE, Carrols prays for relief and judgment as follows:

    a.    temporary, preliminary, and permanent injunctive relief preventing unlawful eviction or interference with Carrols' operations;

    b.    temporary, preliminary and permanent injunctive relief restraining any termination or attempted termination;

    c.    such other and further relief that this Court may deem just and proper.

Dated: July 17, 2020                                        Respectfully submitted,

*/s/ Jeffrey Mayer*
Jeffrey Mayer, Ohio Bar No 0069327
Catherine A. Miller (*pro hac vice* application to be filed)
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
Telephone: (312) 634-5700
Facsimile: (312) 424-1900
Jeffrey.Mayer@akerman.com
Catherine.Miller@akerman.com

Stephen W. Funk
Roetzel & Andress LPA
222 South Main Street
Suite 400
Akron, OH 44308
Telephone:  (330) 849-6602
Facsimile:  (330) 376-4577
sfunk@ralaw.com

*Attorneys for Carrols LLC*

14

53729382;4

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2020, a copy of the foregoing was filed electronically with the Court, and by email to:

>Terry A. Moore, Esq.
>Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A.
>PO Box 36963
>Canton OH 44735
>tmoore@kwgd.com

>>*/s/  Jeffrey J. Mayer*
>>Jeffrey J. Mayer (0069327)

>>*Attorneys for Carrols LLC*

53729382;4